JOHN KING, et al., Appellants, v. JOHN GREENWAY, et al., Respondents.

One engaged in repairing and putting new machinery into a steam canal boat is a builder within the meaning of the act providing for the collection of demands against ships and vessels (chap. 482, Laws of 1862, amended by chap. 422, Laws of 1863), and a lien is created under said act in favor of one furnishing materials to such builder for the work.

*Hubbell* v. *Denison* (20 Wend., 181) distinguished.

A canal boat is a vessel within the meaning of said act.

*Many* v. *Noyes* (5 Hill, 34) distinguished.

The facts that the materials were furnished, and the work done on the credit of the builder, that action was brought against him, judgment recovered, execution issued, and supplementary proceedings instituted, do not affect the lien.

Said act, so far as it creates and provides for liens upon boats constructed for and navigating the canal or the interior waters of the State, is not violative of the United States Constitution, and is valid.

The fact that the boat is a steamboat, and that it is proceeded against by its name, does not necessarily make the case one of admiralty jurisdiction; it is the character of the claim as a maritime contract which determines this.

A lien created by the said act ceases when the vessel leaves the port where the debt was contracted, unless the person claiming the lien files specifications thereof as prescribed by the act (section 2), within twelve days after such departure, save when the vessel is one "navigating the Western and Northwestern lakes, or either, or any of them" (chap. 422, Laws of 1863, § 2), in which case the claimant has until the first Tuesday of February next, succeeding the contracting of the debt, to file specifications.

A steam canal boat was constructed with a view to her running upon Lake Ontario. She never did run anywhere except upon the canal, Oswego river, and Seneca lake. In an action upon a bond given to

release the boat from a warrant issued under said act; *held,* that the exception in the act, as to vessels navigating the lakes mentioned, did not include vessels navigating the canal and tributaries to the lakes, and that as specifications were not filed within twelve days after her leaving the port where the debt was contracted that the lien ceased, the proceedings were invalid, and the defendants were not liable.

(Submitted November 28, 1877; decided December 11, 1877.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon a report of a referee and granting a new trial.

This action was brought upon a bond executed by the defendant to obtain the release of a steam canal boat from a warrant issued under the act providing for the collection of demands against ships and vessels. (Chap. 482, Laws of 1862; amended by chap. 422, Laws of 1863.)

The referee found, substantially, the following facts:

That during the years 1873 and 1874, the defendant, John Greenway, was the owner of a canal boat, constructed with the design and adopted to be propelled by steam power, and provided with boiler, engine and machinery for that purpose. In pursuance of some arrangement or negotiation between Greenway and J. S. Pierce & Son, boat builders at Phœnix, Oswego Co., N. Y., having a dock and yard for that purpose, the said boat at the close of navigation in 1873, was sent or left at said yard for repairs, some alteration of her machinery, and the putting in of a new patent wheel or wheels, as an improvement. J. S. Pierce & Co. proceeded with the work, and while the boat was on their dock, and during the time from February 19th to June 6th, 1874, plaintiffs at their request, furnished materials, consisting of castings, machinery, etc., and performed work and labor in and about putting in said wheel, gearing, machinery and fixtures, amounting to the sum of $1,314.37. On the 8th day of June, 1874, specifications were filed in the office of the clerk of the county of Oswego, at the city of Oswego, pursuant to said act. After the filing of said specifications, to wit: October 6th,

1874, plaintiffs recovered a judgment in the Supreme Court against the members of said firm of Pierce & Co., for the demand for which said lien was filed. Pierce & Co. failed in September, 1874, and nothing was made or collected on the execution on said judgment. Said boat left Phœnix for Syracuse on or about the 27th day of June, 1874, and did not return; but was on or about the 3d day of December, 1874, seized and taken by the sheriff of Onondaga county, on and by virtue of a warrant issued on an application therefor, specifying the items of said claim, etc., as required by said act; and thereupon the bond in question was given and the warrant discharged. It did not appear that any new specifications were filed after the boat left said dock.

*W. A. Poucher* for appellants. Under the amendatory act of 1863, plaintiffs had until the first Tuesday of February, 1875, to file their lien, and whether filed before or after the boat left the port is immaterial. (Laws 1863, chap. 422, § 2; Laws 1862, chap. 482; *Sheppard* v. *Steel*, 43 N. Y., 59; *Crane* v. *Dygert*, 4 Wend., 675.) The debt was contracted when the labor was completed. (*Mullin* v. *Hicks*, 49 Barb., 250; *Crawford* v. *Collins*, 45 id., 269; *Mott* v. *Lansing*, 57 N. Y., 112.) The giving of the bond for the discharge of the canal boat was a waiver of any technical defect in the prior proceedings if any existed. (*Happy* v. *Mosher*, 48 N. Y., 313; *Delany* v. *Brett*, 51 id., 78; *Onderdonk* v. *Voorhis*, 36 id., 358.) Pierce & Son were the builders of the canal boat within the meaning of the acts of 1862 and 1863. The judgment against Pierce & Son at common law did not affect the lien. (*Mott* v. *Lansing*, 57 N. Y., 113; *Happy* v. *Mosher*, 48 id., 313, 314.) The canal boat was a vessel within the meaning of the act creating the lien. (*Crawford* v. *Collins*, 45 Barb., 269, 271; *Mott* v. *Lansing*, 57 N. Y., 112.) The acts under which the proceeding against the canal boat were instituted are constitutional and valid. (57 N. Y., 112; 43 id., 52; 51 id., 78; *Brookman* v. *Hamill*, 43 id., 554; *Poole* v. *Kermil*, 59 id., 555; 44 id., 415, id., 636; *In re Josephine*, 30 id., 19.)

*Kennedy & Tracy* for respondents. This action upon the bond is in effect a proceeding *in rem* against the vessel the same as was the original seizure. (*Vose* v. *Cockcroft*, 44 N. Y., 418.) If the boat was a canal boat as claimed by plaintiffs on the trial, she is not a ship or vessel within the meaning of the statute. (*Many* v. *Noyes*, 5 Hill, 34; *Crawford* v. *Collins*, 45 Barb., 269; *Emmons* v. *Wheeler*, 10 Sup. Ct. 545. The act under which this proceeding was had is unconstitutional. *In re Josephine*, 39 N. Y., 19; *Freeman* v. *Hosford*, 54 Barb., 200; *Vose* v. *Cockcroft*, 44 N. Y., 415.) Giving the statute the construction claimed for it by the respondents no lien would exist on the boat. (*Crawford* v. *Collins*, 45 Barb., 269; *Veltman* v. *Thompson*, 3 N. Y., 438; *Mott* v. *Lansing*, 57 id., 115; *In re Denny*, 2 Hill, 220; *Ely* v. *Carlney*, 19 N. Y., 496; *Nitchie* v. *Townsend*, 2 Sandf. 299; *Dennison* v. *Schooner Appollonia*, 20 J. R., 193; *Porter* v. *Parmley*, 52 N. Y., 185; *Benton* v. *Wickwein*, 54 id., 226).

MILLER, J. The action was brought upon a bond executed by the defendants to obtain the release of a canal boat from a warrant issued pursuant to the act relating to the collection of demands against ships and vessels.

A number of questions are raised which affect the validity of the proceedings under the attachment which are proper subjects for consideration. It is quite apparent that Pierce & Sons were the builders of the canal boat within the meaning of the acts of 1862 and 1863, and the facts presented are very similar to those in the case of (*Happy* v. *Mosher*, (48 N. Y., 313,) and *Sheppard* v. *Steele*, 43 N. Y., 52), where the lien was held to be valid. The case of (*Hubbell* v. *Denison*, (20 Wend. 181,) arose under the provisions of the Revised Statutes, and the decision has no application to a case originating under the statutes above cited, which contain different language.

The canalboat was, we think, a vessel within the meaning of the statute, which created the lien. In *Mott* v. *Lansing*, (57

N. Y., 112), and *Crawford* v. *Collins* (45 Barb., 269), the liens were against canal boats, and these cases are decisive of the question. The case of *Many* v. *Noyes*, (5 Hill, 34); which is cited to sustain a contrary position, arose under the Revised Statutes, and as was held in *Crawford* v. *Collins* the act of 1862 was a substitute for the Revised Statutes, enlarged its terms, and was designed to extend its benefits. It is not therefore in point. It is said that the credit was given to Pierce & Sons, and the goods not sold, nor work done on the credit of the boat, as a judgment was recovered for the amount, execution issued, and proceedings supplementary to execution instituted. We think that the credit given, and these proceedings in no way affected the lien. In *Happy* v. *Mosher*, (48 N. Y., 313,) it was decided that the taking of the note of a third person, does not affect the lien, except to defer its enforcement. In *Mott* v. *Lansing* (*supra*), it was held that there was nothing in the statutes requiring that the work shall be done upon the credit of the vessel before the lien attaches, and that it does not impair the lien that the work was performed upon the personal credit of the owner.

There is no ground for claiming that the act in question was in violation of the Constitution of the United States. Jurisdiction is vested in the courts of the United States in all matters of contract or tort in certain cases, as when the vessels are sea-going or ocean-bound, or for the coasting-trade, and employed in business of commerce and navigation between ports in different States and territories. (*Propellor Genesee Chief* v. *Fitzhugh*, 12 How. [U. S.], 443.) And a distinction exists between maritime contracts, as in a case for supplies, etc., to a vessel engaged in navigation, and contracts not maritime for work and supplies in the construction of a vessel not launched. In the latter case it is held that the provisions of the act of 1862 are not in conflict with admiralty jurisdiction, and therefore are not unconstitutional, and the cases are numerous which uphold such a lien. (*Sheppard* v. *Steele*, 43 N. Y., 52; *Mott* v. *Lansing*,

57 N. Y., 112; *Delaney* v. *Brett*, 51 N. Y., 78; *Poole* v. *Kermit*, 59 N. Y., 555; *Brookman* v. *Hamill*, 43 N. Y., 554).

The decision *In re Josephine* (39 N. Y., 19), is not in conflict with the cases last cited, nor is there any case which sustains the doctrine contended for. The fact that the boat was a steamboat and proceeded against by its name, does not alter the case or present any distinction which demands the application of a different rule.

The General Term reversed the judgment of the court below upon the authority of *Squires* v. *Abbott* (61 N. Y., 530), which holds that a lien upon a vessel created by chapter 482, Session Laws 1862, ceases when the vessel leaves the port, unless the person claiming the lien files specifications thereof as prescribed by section two of the act, within twelve days after such departure, and that specifications filed prior to departure will not suffice. It is claimed by the counsel for the appellant that the General Term overlooked the amendatory act (chap. 422, S. L. of 1863), which provides a different time for filing liens against "other vessels" than "sea-going or ocean-bound vessels." The act of 1862, section one, declares that "whenever a debt amounting to fifty dollars or upwards, as to a sea-going or ocean-bound vessel, or amounting to fifteen dollars or upwards, as to any other vessel, shall be contracted" by any of the persons named for the purposes therein specified, the same shall be a lien upon the vessel as provided. Section two provides, among other things, that the debt shall cease to be a lien whenever the vessel shall leave the port at which such debt was contracted, "unless the person having such lien shall within twelve days after such departure cause to be drawn up and filed specifications of such lien," etc. Two classes of vessels are referred to in the first section of the act, and two classes of debts, and in each case no distinction is made as to the time of filing specifications, or the mode of proceeding to enforce the lien. In each class the same course is to be pursued, and the statute applies alike to both. By chapter 422, Session Laws of 1863, the act of 1862, already

cited, was amended, and it was provided that the second section above cited "shall not apply to vessels navigating the Western and Northwestern lakes, or either or any of them," and provision was made changing the time when the lien be filed, and prescribing the mode in which the same might be enforced, and thereby the person claiming a lien had until the first Tuesday of February next, succeeding the time when the debt was contracted to file specifications. The question then arises whether the canal boat in question was embraced within those especially referred to in the statute. The complaint alleges that the canal boat was used in navigating the lakes, rivers and canals of this State; but the evidence shows that, although regard was had in her construction to her running on Lake Ontario, between Oswego and Canada, she never did run anywhere except upon the canal, Oswego river and Seneca lake, nor is their any finding to the contrary. She was not then a vessel navigating the lakes mentioned, and does not come within the provision cited from the act of 1863. While this class of vessels was excepted from its operation, the " other vessels " referred to besides " ocean-bound and sea-going vessels " remained as before, subject to the provisions of the act of 1862, which included all vessels navigating the canals and rivers, and there is no ground for claiming, in the absence of any provision to that effect, that the act of 1863 includes vessels navigating the tributaries of the lakes mentioned, and the canals and artificial channels connected therewith. Such an interpretation is not borne out by its language, or its plain import. The construction claimed would include all boats on the canals, which we think could not have been intended.

It follows that the General Term were right in holding that the case last cited was decisive of the question, and in reversing the judgment, and the same must be affirmed, with costs.

All concur, except CHURCH, Ch. J., absent.

Order affirmed, and judgment accordingly.