FREDERICK M. WILSON AND ADRIAN WILSON, RESPONDENTS, *v.* GEORGE W. LAWRENCE AND CHARLES F. PETTY, IMPLEADED, ETC., APPELLANTS.

*Chapter 482 of 1862 — what is not a maritime contract.*

Where a vessel has been launched before completion, and thereafter, and while she is lying in tide-waters, a contract is made for furnishing her with sails, such contract is not a maritime contract, and the party making the same may obtain and enforce a lien upon the vessel for the amount due thereon, by proceedings under chapter 482 of the Laws of 1862.

APPEAL from a judgment in favor of the plaintiffs, entered upon the trial of this action by the court, without a jury.

*Edward Seymour*, for the appellants.

*Benedict, Taft & Benedict*, for the respondents

DYKMAN, J. :

During the summer of 1877, Frederick Beach was engaged in the construction of the schooner La Ninfa, at Port Jefferson, in Suffolk county, Long Island, and on the 18th day of September,

1877, she was launched without any sails, and incomplete in other respects, and remained at the same port. On the second day of October, Beach made a contract with the plaintiffs to furnish new sails for the vessel, and while they were being made the vessel was again put on the ways to be finished, and while she was there the sails were furnished. After her completion she was again launched and taken to New York. About the middle of November, within twelve days after the vessel left Port Jefferson, the plaintiffs filed in the office of the county clerk of Suffolk county specification for a lien, in pursuance of the act of the Legislature of this State, passed April 24, 1862. On the 28th day of November, 1877, the plaintiffs obtained a warrant under the same law for the enforcement of their lien, and the vessel was seized under it by the sheriff of the county of New York. Thereupon, to procure her discharge from the seizure, the bond was given upon which this action is brought.

No defects in the proceedings for the enforcement of the lien claimed by the plaintiffs are disclosed, and the execution and delivery of the bond in suit must be held to be a waiver of such irregularities, if any existed. (*Franklin* v. *Pendleton*, 3 Sandf., 572.) Neither is there any doubt but that the amount claimed by the plaintiffs is honestly due. If, therefore, they had a subsisting lien upon the vessel for the sum claimed, they were entitled to recover in this action, and the judgment in their favor must be affirmed. (Laws of 1862, chapter 482, § 13.)

Whether the plaintiffs acquired a lien by virtue of their proceedings under the statute of 1862, their regularity being assumed, will be determined by ascertaining whether or not their claim arises under a maritime contract, because the federal Constitution declares that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction. This was followed by the judiciary act of Congress of 1789, vesting in the district courts exclusive cognizance of all civil causes of admiralty and maritime jurisdiction. If, therefore, the statute of 1862 assumes to confer on the State courts a remedy on a marine contract, by a proceeding *in rem*, it is void for being in conflict with the Constitution and the laws of the United States. (*The Hine* v. *Trevor*, 4 Wallace, 555.)

To take any benefit from their proceedings under the statute, therefore, they must have been under a contract made on the land, to be there performed.

In respect to claims against the owners of vessels, not in their nature maritime, the jurisdiction of the State remains complete, and it may prescribe forms and modes for its enforcement. (*Brookman* v. *Hamill*, 43 N. Y., 554.)　It has been decided by the Court of Appeals that so far as the statute of 1862 can be applied to demands for supplies to a domestic vessel, in her home port, it is in conflict with the Constitution and laws of the United States, and therefore void.　*In re Steamboat Josephine* (39 N. Y., 19), as explained and limited in the subsequent case of *Brookman* v. *Hamill* (43 N. Y., 555), this decision has only that extent. The distinction is between maritime contracts and those not maritime.　Instances of the former are contracts for repairing, supplying, and navigating ships and vessels, and instances of the latter are contracts for work and materials in the construction of a new vessel.　As to the latter class, it is held that this statute is valid, and not in conflict with admiralty jurisdiction.　(*King* v. *Greenway*, 71 N. Y., 413, and cited *Poole* v. *Kermit*, 59 id., 554.)

In the case of *Roach* v. *Chapman* (22 How. [U. S.], 129), a person who furnished boilers and engines for a steamboat, libeled the vessel in admiralty, and it was held that the contract for supplying the engines was not a maritime contract and the admiralty courts had no jurisdiction.　The same court held, in the case of *The People's Ferry Company* v. *Beers* (20 How. [U. S.], 393), that the admiralty jurisdiction of the courts of the United States does not extend to cases where a lien is claimed by the builders of a vessel for work and material found in its construction.　It seems to follow, therefore, that if the claim of the plaintiffs was for material furnished for the construction of a new vessel, then they did acquire a lien by their proceedings, and their recovery must be sustained.　The position of the defendant, that the proceedings of the plaintiffs was under a maritime contract, rests upon the fact that the vessel was on tide-water at the time it was made, and that it related in some way to the voyage on which the vessel was about to enter.　It is quite true that contracts connected with navigation are classed as maritime contracts, but the simple fact

that an unfinished vessel has been let into the water, when a contract in relation to her completion is made, by no means determines its character. She may be there to receive her sails, or her machinery, in pursuance of a contract made long before. While the admiralty courts have exclusive jurisdiction over contracts purely maritime, and relating to commerce and navigation, they have no jurisdiction over contracts for the construction of vessels, or for furnishing materials for that purpose. (20 How. [U. S.], 393.) Now, if machinery and boilers are materials for the construction of a vessel, why are not the sails also. Both are necessary to its completion, and neither are in any proper sense connected with navigation or commerce. Material for a tiller to a new vessel would fall in the same class, and yet that might be furnished after launching.

The judgment should be affirmed, with costs.

BARNARD, P. J., and GILBERT, J., concurred.

Judgment affirmed, with costs.